UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONG VAN NGUYEN,<br><br>      Petitioner,<br><br>v.<br><br>PATRICIA HYDE, Acting Director of the Boston Field Office, U.S. Immigration and Customs Enforcement; TODD LYONS, Acting Director of the U.S. Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the U.S. Department of Homeland Security; and PAMELA BONDI, Attorney General of the United States, in their official capacities,<br><br>      Respondents. | Civil Action No. 25-cv-11470-MJJ |

**RESPONDENTS' MEMORANDUM IN OPPOSITION TO PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

Respondents, Patricia Hyde, Todd Lyons, Kristi Noem, and Pamela Bondi,[1] by and through their attorney, Leah B. Foley, United States Attorney for the District of Massachusetts, respectfully submit this opposition to Dong Van Nguyen's ("Petitioner") Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. Doc. 1.

Petitioner, who is currently being detained by U.S. Immigration and Customs Enforcement ("ICE"), filed this Petition pursuant to 28 U.S.C. § 2241, which vests courts with authority to issue

---

[1] Petitioner fails to name his immediate custodian as a respondent in this matter as required by the Supreme Court and the U.S. Court of Appeals for the First Circuit. *See Rumsfeld v. Padilla*, 542 U.S. 426 (2004) and *Vasquez v. Reno*, 233 F.3d 688 (1st Cir. 2000). The Court lacks jurisdiction over the supervisory officials named as Respondents to this action. *See Vasquez*, 233 F.3d at 696 (explaining that supervisory officials are not proper respondents to habeas actions, holding that "as a general rule, the Attorney General is neither the custodian of such an alien in the requisite sense nor the proper respondent to a habeas petition.").

1

writs of habeas corpus to individuals "in custody in violation of the Constitution or laws or treaties of the United States." Petitioner asserts that he is being held in custody in violation of 8 U.S.C. § 1231(a) and the Due Process Clause of the Fifth Amendment because, in his view, ICE "cannot effect his prompt removal from the United States." Doc. 1 ¶ 55.

In fact, Petitioner's detention by ICE for purposes of effectuating his final order of removal is fully supported by the Immigration and Nationality Act ("INA"), its implementing regulations, and the Constitution. Petitioner is undisputedly subject to a final order of removal and is detained pursuant to 8 U.S.C. § 1231(a). *See* Declaration of Keith M. Chan, Assistant Field Office Director for U.S. Department of Homeland Security ("Chan Decl."), filed herewith, ¶ 6. ICE has complied with its statutory and regulatory authority to detain Petitioner because ICE is prepared to effectuate Petitioner's removal order in the reasonably foreseeable future. Chan Decl. ¶¶ 11-17. As such, Petitioner's detention is lawful and Petitioner has no entitlement to release aside from his return to his home country of Vietnam.

For the reasons, the Petition should be denied.

## FACTUAL BACKGROUND

Petitioner is a native and citizen of Vietnam. Doc. 1 ¶ 20; Chan Decl. ¶ 7. On November 18, 1980, Petitioner lawfully entered the United States as a refugee. Chan Decl. ¶ 8. On February 11, 1982, Petitioner adjusted his status to Legal Permanent Resident. Doc. 1 ¶ 23. On December 8, 1992, an Immigration Judge ordered the Petitioner removed from the United States due to a 1992 criminal conviction. Doc. 1 ¶ 24; Chan Decl. ¶ 9. This is a final order of removal. Chan Decl. ¶ 9. Petitioner was taken into custody by Immigration and Naturalization Service ("INS") after his removal order. Doc. 1 ¶ 25. INS was unable to repatriate Petitioner to Vietnam due to a lack of repatriation agreement between the United States and Vietnam at that time. Doc. 1 ¶

26. As a result, on May 26, 1994, Petitioner was released from INS custody on an Order of Supervision. Doc. 1 ¶ 27. In 1995, Petitioner's Order of Supervision was revoked because he was convicted of a crime. Doc. 1 ¶ 28. After Petitioner completed his term of incarceration, he was again detained by INS for removal. Doc. 1 ¶ 29. Because a repatriation agreement between the United States and Vietnam still did not exist, INS was again unable to repatriate Petitioner to Vietnam. Doc. 1 ¶¶ 29-30. On March 7, 2000, Petitioner was again released on an Order of Supervision. Doc. 1 ¶ 31. In 2011, Petitioner's Order of Supervision was revoked because he was convicted of a federal crime. Doc. 1 ¶ 32. After completing his term of incarceration, Petitioner was transferred to ICE custody. Doc 1. ¶ 32. In 2012, Petitioner was again released on an Order of Supervision. Chan Decl. ¶ 10.

Following the Petitioner's most recent Order of Supervision, the United States entered into a repatriation agreement with Vietnam which allows for the repatriation of Vietnamese citizens who may have entered the United States as refugees before July 12, 1995. Chan Decl. ¶ 16. Pursuant to this repatriation agreement, the United States is now removing Vietnamese citizens to Vietnam that may have entered the United States before July 12, 1995. Chan Decl. ¶ 17. ICE now believes that the Vietnamese government will issue a travel document for the Petitioner. Chan Decl. ¶ 14.

To that end, on May 21, 2025, ICE revoked Petitioner's Order of Supervision pursuant to its authority under 8 C.F.R. § 241.13. *See* Chan Decl. ¶ 11; *see also* Notice of Revocation of Release, attached hereto as *Exhibit 1*. According to the Notice of Revocation of Release, ICE determined that Petitioner's order of supervision should be revoked "based on a review of [his] official alien file and a determination that there [were] changed circumstances in [Petitioner's] case." *See Exhibit 1*. That same day, ICE served Petitioner with a copy of the Notice of

Revocation of Release. *See Exhibit 1*. ICE also conducted an informal interview with Petitioner pursuant to 8 C.F.R. § 241.13(i)(3) on May 21, 2025. Chan Decl. ¶ 13. In furtherance of its intent to effectuate Petitioner's removal order, on May 22, 2025, ICE asked Petitioner to prepare a request for travel documents to submit to the Vietnamese government. Doc. 1 ¶ 49. ICE is currently processing a travel document for the Petitioner to return to Vietnam. Chan Decl. ¶ 15.

Petitioner is currently being detained at the Plymouth County Correctional Facility in Plymouth, Massachusetts. Chan Decl. ¶ 18.

## ARGUMENT

ICE's detention of Petitioner is authorized by statute and regulation and does not offend the Constitution.

### A. Petitioner Is Lawfully Detained Pursuant To 8 U.S.C. § 1231

The detention of a non-citizen subject to a final deportation order is governed by 8 U.S.C. § 1231. When an alien is ordered removed from the United States, federal law requires the government to effectuate that removal within a period of 90 days. 8 U.S.C. § 1231(a)(1)(A). During this 90-day "removal period", the government must detain the alien in custody. 8 U.S.C. § 1231(a)(2). If after 90 days the government has not removed the detainee, Section 1231(a)(6) allows the government to continue its detention "for a period reasonably necessary to secure the alien's removal." *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001). "What qualifies as a period reasonably necessary, or rather, what qualifies as a period *un*reasonably necessary, has less to do with the detention's duration and more to do with the practicality of deportation." *DeCarvalho v. Souza*, 539 F. Supp. 3d 221, 224 (D. Mass. 2021). To that end, in determining the period "reasonably necessary" to secure removal, the Supreme Court has instructed the habeas court that it should "measure reasonableness primarily in terms of the statute's basic purpose, namely,

4

assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Zadvydas*, 533 U.S. at 699-700.

The Supreme Court recognizes a six-month window following the removal period during which a noncitizen's detention is presumptively reasonable. *Id.* at 701. After that, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the [g]overnment must respond with evidence sufficient to rebut that showing" or release the noncitizen subject to supervision. *Id.*; *see also* 8 C.F.R. § 241.13 (setting out *Zadvydas* procedures).

While 8 U.S.C. § 1231(a)(3) is silent as to revocation procedures for individuals like Petitioner who were initially released pursuant to an Order of Supervision, ICE's implementing regulation permits the agency to revoke an Order of Supervision for purposes of effectuating a removal in the "reasonably foreseeable" future. *See generally* 8 C.F.R. § 241.13.[2] More specifically, and relevant here, the implementing regulation provides that ICE may "revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Upon revocation, the alien should be notified of the reasons for the revocation and the agency should conduct an

---

[2] Entitled "Determination of whether there is a significant likelihood of removing a detained alien in the reasonably foreseeable future", 8 C.F.R. § 241.13 applies to aliens detained under the custody review procedures in section 241.4 after the expiration of the removal period "where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed…in the reasonably foreseeable future." 8 C.F.R. § 241.13(a).

informal interview to afford the alien the opportunity to respond to the reasons stated for the revocation in the notification.  8 C.F.R. § 241.13(i)(3).

Here, Petitioner's Order of Supervision was revoked due to a change in circumstances on May 21, 2025.  *See Exhibit 1*.  Petitioner has been detained since that date—i.e., for less than one month.  Because Petitioner has been detained for less than six months, his detention pending execution of his removal order is presumptively reasonable under the Supreme Court's decision in *Zadvydas*, and his Petition could be dismissed for this reason alone.  *See Zadvydas*, 533 U.S. at 701.

Regardless, Petitioner has failed to point to any "good reason" that his removal is not likely to occur in the reasonably foreseeable future.  *See Zadvydas*, 533 U.S. at 699-700.  To the contrary, following the Petitioner's most recent Order of Supervision in 2012, the United States has since entered into a repatriation agreement with Vietnam which allows for the repatriation of Vietnamese citizens who—like Petitioner—may have entered the United States as refugees prior to July 12, 1995.  *See* Chan Decl. ¶ 16.  Pursuant to that agreement, ICE recently began removing Vietnamese citizens to Vietnam who entered the United States as refugees prior to July 12, 1995.  *See* Chan Decl. ¶ 17.  ICE now believes that the Vietnamese government will issue a travel document to Petitioner, and ICE is currently processing a travel document for Petitioner.  *See* Chan Decl. ¶¶ 14-15.

Additionally, ICE has complied with its regulations.  *See* 8 C.F.R. § 241.13(i).  To start, ICE determined that a change in circumstances warranted the revocation of Petitioner's Order of Supervision.  *See Kong v. United States*, 62 F.4th 608, 619-620 (1st Cir. 2023) (noting that ICE's decision to re-detain a noncitizen who has been granted supervised release is governed by ICE's own regulation requiring its individualized determination that, based on changed circumstances,

removal has become significantly more likely in the reasonably foreseeable future). Following its determination that there had been a chance in circumstances relating to Petitioner's case, ICE issued a written notice to Petitioner informing him of the revocation of his Order of Supervision and its reasons for the revocation. *See* Chan Decl. ¶ 12; *see also Exhibit 1*.

Although Petitioner's detention may lack a specific end date, "this uncertainty alone does not render his detention indefinite in the sense the Supreme Court found constitutionally problematic in *Zadvydas*." *Silva v. Moniz*, No. 20-cv-12255-DJC, 2021 WL 2953338, at *3 (D. Mass. 2014) (citing *Prieto-Romero v. Clark*, 534 F.3d 1053, 1062 (9th Cir. 2008)). In *Zadvydas*, removal was not reasonably foreseeable because no country would accept the deportees or the United States lacked an extradition treaty with the receiving countries, making the deportees' detention "indefinite and potentially permanent." *Zadvydas*, 533 U.S. at 696. That is not the case here. The United States has recently entered into a repatriation agreement with Vietnam, and ICE has started to remove Vietnamese citizens to Vietnam consistent with that agreement. ICE believes that the Vietnamese government will now issue a travel document to Petitioner, and ICE has taken steps to procure said travel documents. Under these circumstances, Petitioner has failed to satisfy his initial burden that there is "no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 699-700; *see also Almonte v. Holder*, 983 F. Supp. 2d 234, 240 (W.D.N.Y. 2013) (finding that where "the request for travel document remains pending with the Consulate, and there is nothing in the record before the court to indicate that the Dominican authorities are inclined to deny the request once petitioner's pursuit of judicial review in the federal courts is resolved, petitioner failed to satisfy initial burden under *Zadvydas*); *Kassama v. Dept. of Homeland Sec.*, 553 F. Supp. 2d 301, 306-307 (W.D.N.Y. 2008) (dismissing petitioner's habeas petition where there was no indication that petitioner's home country would

7

refuse to issue travel documents and where ICE expected that travel documents would issue); *Khaleque v. Dept. of Homeland Sec.*, No. 08-CV-477S, 2009 WL 81318, at *4 (W.D.N.Y. 2009) (same).

However, even if this Court should find that Petitioner has satisfied his initial burden, ICE has nonetheless submitted sufficient evidence to rebut any argument that Petitioner's removal is not "reasonably foreseeable." Petitioner relies heavily on the government's inability to repatriate Petitioner to Vietnam in the past to support his position that removal is not "reasonably foreseeable". But the government has submitted evidence that, following Petitioner's most recent Order of Supervision, the United States entered into a repatriation agreement with Vietnam and has since started to remove Vietnamese citizens to Vietnam in accordance with that agreement. There is no evidence to suggest that Vietnam will not now issue travel documents to Petitioner.

Simply put, Petitioner does not dispute that he is subject to a final order of removal, and ICE has determined, based on recent changes in circumstances, that there is a significant likelihood of removing Petitioner in the reasonably foreseeable future. Under these circumstances, ICE's detention of Petitioner is supported by 8 U.S.C. § 1231(a)(3) and its implementing regulation.

      **B.**    **Petitioner's Statutorily Authorized Detention Is Constitutional.**

Petitioner's claim that his detention violates the Fifth Amendment's Due Process Clause likewise fails because his detention comports with the framework set forth by the Supreme Court in *Zadvydas* through which a due process challenge to a post-final order of detention must be analyzed. Petitioner does not face indefinite detention and will be released to Vietnam in the immediate future as ICE is in the process of securing the necessary travel documents to return Petitioner to his home country.

As recognized by the Supreme Court, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). When evaluating "reasonableness" of detention, the touchstone is whether an alien's detention continues to serve "the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. And here, it does.

To set forth a Constitutional violation for a Section 1231 detention, an individual must satisfy the *Zadvydas* test. *See Jimenez v. Cronen,* 317 F. Supp. 3d 626, 634 (D. Mass. 2018) (explaining that "*Zadvydas* addressed the substantive due process component of the Fifth Amendment. The Supreme Court held, in effect, that an alien's right to substantive due process could be violated by prolonged detention even if the alien's right to procedural due process had been satisfied."); *Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024) (explaining that "*Zadvydas*, largely, if not entirely forecloses due process challenges to § 1231 detention apart from the framework it established."); *Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003) (the *Zadvydas* "test articulates the outer bounds of the Government's ability to detain aliens … without jeopardizing their due process rights.").

In *Zadvydas*, the Supreme Court held that the government cannot detain an alien "indefinitely" beyond the 90-day removal period. 533 U.S. at 682. The Supreme Court "read an implicit limitation into the statute … in light of the Constitution's demands" and held that Section 1231(a)(6), "limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States." *Id.* at 689. The *Zadvydas* Court held that post-removal detention for six months is "presumptively reasonable." *Id.* at 701. Beyond six months, the Supreme Court explained, an individual could file a habeas petition seeking release. *Id.* at 700-01. In such petition, the individual must show there is "good reason to believe that there

9

is no significant likelihood of removal in the reasonably foreseeable future[.]" *Id.* at 701.  If the individual does so, the burden would then shift to the government to produce "evidence sufficient to rebut that showing." *Id.*

Petitioner's Due Process challenge fails under his present circumstances.  To the extent Petitioner argues that his current detention violates the Constitution because he was previously released on an Order of Supervision, that argument is without merit.  First, a prior release pursuant to an Order of Supervision does not provide Petitioner with a constitutional basis not to be arrested again in the future if ICE determines effectuation of his removal order is possible.  As explained by another session of this Court, if "the government in granting discretionary relief to an alien foreswears its ability to later detain an alien as part of the removal mechanism, then the government would have every incentive to abstain from any favorable exercise of discretion." *Rodriguez-Guardado v. Smith,* 271 F. Supp. 3d 331, 335 (D. Mass. 2017).  Stated similarly, a prior order of release on account of the lack of ability to remove an alien "did not amount to a permanent injunction against future detention." *Hango v. U.S. Att'y Gen.*, No. 3:05-CV-2196, 2019 WL 1301981, at *2 (W.D. La. Mar. 21, 2019).

Additionally, Petitioner's due process claim fails because any *Zadvydas* challenge cannot be raised until Petitioner has been detained for six-months in post-final order custody and, here, he has been detained for less than one month. *See Rodriguez-Guardado,* 271 F. Supp. 3d at 335 ("As petitioner has been detained for approximately two months as of this date, the length of his detention does not offend due process."); *Julce v. Smith*, No. CV 18-10163-FDS, 2018 WL 1083734, at *5 (D. Mass. Feb. 27, 2018) (habeas petition deemed "premature at best" as it was filed after three months of post-final order detention); *Farah v. U.S. Att'y Gen.,* 12 F.4th 1312, 1332–33 (11th Cir. 2021) (explaining that "[i]f after six months he is still in custody and has not

been removed from the United States, then he can challenge his detention under section 1231(a). But until then, his detention is presumptively reasonable under *Zadvydas*").

Finally, Petitioner does not face indefinite detention. In light of the recent repatriation agreement between the United States and Vietnam, ICE has taken steps to procure Petitioner's travel documents from Vietnam and anticipates that such documents will be issued. ICE has started to remove Vietnamese citizens to Vietnam under similar conditions. Accordingly, the detention of Petitioner—an alien who does not dispute that he is deportable—for less than one month for the limited period of effectuating his removal does not violate the Fifth Amendment.

## CONCLUSION

For the reasons described above, the Petition should be dismissed.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:    */s/ Nicole M. O'Connor*
Nicole M. O'Connor
Assistant United States Attorney
United States Attorney's Office
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3112
nicole.o'connor@usdoj.gov

Date:  May 27, 2025

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to any non-registered participants via first class mail.

                                                */s/ Nicole M. O'Connor*
                                                NICOLE M. O'CONNOR
                                                Assistant U.S. Attorney

Dated:  May 27, 2025