UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONG VAN NGUYEN,<br><br>    Petitioner,<br><br>    v.<br><br>PATRICIA HYDE, Acting Director of the Boston Field Office, U.S. Immigration and Customs Enforcement; TODD LYONS, Acting Director of the U.S. Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the U.S. Department of Homeland Security; and PAMELA BONDI, Attorney General of the United States, in their official capacities,<br><br>    Respondents. | Civil Action No. 25-cv-11470-MJJ |

**MEMORANDUM OF DECISION AND ORDER**

June 20, 2025

JOUN, D.J.

  Dong Van Nguyen ("Mr. Nguyen" or "Petitioner") petitions the Court under 28 U.S.C. § 2241 and the Due Process Clause of the Fifth Amendment for relief from physical custody by Immigration and Customs Enforcement ("ICE"). For the reasons stated below, Mr. Nguyen's petition is GRANTED.

**I. BACKGROUND**

  **A. Mr. Nguyen's Background**

  Mr. Nguyen was born in Vung Tau, Vietnam. [Doc. No. 19 at ¶ 21; Doc. No. 19-1 at 7]. In 1980, Mr. Nguyen fled Vietnam as a refugee after the Vietnam War and was placed in a refugee camp in Singapore. [Doc. No. 19 at ¶ 22]. In November 1980, Mr. Nguyen lawfully

1

entered the United States as a refugee and, on February 11, 1982, his status was adjusted to Legal Permanent Resident. [*Id*. at ¶¶ 23–24; Doc. No. 19-1 at 9]. On December 8, 1992, Mr. Nguyen was ordered removed by an Immigration Judge in Boston due to a 1992 Massachusetts criminal conviction. [Doc. No. 19 at ¶ 25; Doc. No. 19-1 at 11]. Vietnam was designated as the country of removal for Mr. Nguyen; however, at the time, the U.S. and Vietnam did not have diplomatic relations. [Doc. No. 19 at ¶¶ 25, 27]. No repatriation agreement existed between the United States and Vietnam. [*Id*. at ¶ 27]. Outside of his initial detention during deportation proceedings, Mr. Nguyen was not taken into Immigration and Naturalization Service ("INS") custody when he was ordered removed. [*Id*. at ¶ 26]. Instead, on November 15, 1994, Mr. Nguyen was placed on an Order of Supervision ("OSUP") with INS. [*Id*. at ¶ 28; Doc. No. 19-1 at 13–14].

In the early to mid-1990s, Mr. Nguyen's release was revoked because of another criminal conviction. [Doc. No. 19 at ¶ 29]. As a result, INS detained Mr. Nguyen upon his release from incarceration. [*Id*.]. In 1995, the U.S. and Vietnam established diplomatic relations; however, there was still no existing repatriation agreement between the countries. [*Id*. at ¶ 30]. During this period, INS was unable to obtain any travel documents from the Embassy of the Socialist Republic of Vietnam on behalf of Mr. Nguyen. [*Id*. at ¶ 31]. After being held in INS detention for approximately three years, on or about March 7, 2000, Mr. Nguyen was released from INS custody on an OSUP. [*Id*. at ¶ 32; Doc. No. 19-1 at 16]. Vietnam and the United States still did not have any repatriation agreement. [Doc. No. 19 at ¶ 32].

It was not until 2008 that the United States and Vietnam entered into a repatriation agreement, but the agreement did not have a provision to accept any Vietnamese citizens, like Mr. Nguyen, who arrived in the United States before July 12, 1995. [*Id*. at ¶ 35]. In 2011, Mr. Nguyen received a federal conviction and was imprisoned. [*Id*. at ¶ 33]. While he was incarcerated, the United States government was unable to obtain travel documents from the

Embassy of the Socialist Republic of Vietnam. [*Id*. at ¶ 34]. When Mr. Nguyen finished serving his sentence in or around 2012, he was not detained by ICE; he was placed on an OSUP. [*Id*. at ¶ 36; Doc. No. 19-1 at 21–23]. In 2012, Mr. Nguyen was jailed for a pending criminal case that resulted in a nolle prosequi in 2014. [Doc. No. 19 at ¶ 36]. When he was released on June 6, 2014, ICE again placed him on an OSUP.[1] [*Id*.; Doc. No. 19-1 at 21–23, 25].

---

[1] The April 2, 2012 OSUP, which is the latest, includes the following conditions of release:
- That you appear in person at the time and place specified, upon each and every request of the U.S. Immigration and Customs Enforcement, for identification and for deportation or removal.
- That upon request of the U.S. Immigration and Customs Enforcement, you appear for medical or psychiatric examination at the expense of the United States Government.
- That you provide information under oath about your nationality, circumstances, habits, associations, and activities and such other information the U.S. Immigration and Customs Enforcement, considers appropriate.
- That you do not travel outside The State of Massachusetts for more than 48 hours without first having notified the U.S. Immigration and Customs Enforcement office of the dates and places of such proposed travel.
- That you furnish written notice to the U.S. Immigration and Customs Enforcement office of any change of residence or employment within 48 hours of such change.
- That you report in person On Wednesday, May 9, 2012 at 9:00 AM to the Immigration and Customs Enforcement office at: 10 New England Executive Park, Burlington, MA 01803 781-359-7500 unless you are granted written permission to report on another date.
- That you assist the U.S. Immigration and Customs Enforcement, in obtaining any necessary travel documents.
- That you do not associate with known gang members, criminal associates, or be associated with any such activity.
- That you do not commit any crimes while on this Order of Supervision.
- That you report to any parole or probation officer as required within 5 business days and provide the U.S. immigration and Customs Enforcement with written verification of the officers name, address, telephone number, and reporting requirements.
- That you continue to follow any prescribed doctors orders whether medical or psychological including taking prescribed medications.
- That you provide the U.S. Immigration and Customs Enforcement with written copies of requests to Embassies or Consulates requesting the issuance of a travel document.
- That you provide the U.S. Immigration and Customs Enforcement with written responses from the Embassy or Consulate regarding your request.
- Any violation of the above conditions will result in revocation of your employment authorization document.
- Any violation of these conditions may result in you being taken into U.S. Immigration and Customs Enforcement custody and you being criminally prosecuted.
- Other. That you report to the U.S. Probation Office located at: Williams Building, 408 Atlantic Avenue, Room 434, Boston, MA 02110 973-645-6161 within 72 hours of being released.

[Doc. No. 19-1 at 21–23, 25].

### B. <u>2020 Memorandum of Understanding</u>

In 2020, the United States and Vietnam signed a Memorandum of Understanding (the "2020 MOU") regarding the "acceptance of Vietnamese citizens who have been ordered removed by U.S. competent authority and who arrived in the United States before July 12, 1995." [Doc. No. 19 at ¶ 37; Doc. No. 21-2 at 1]. "The purpose of [the 2020 MOU] is to establish a process of review and issuance of travel documents for Vietnamese citizens ordered removed from the United States and to facilitate the acceptance of all such Vietnamese citizens." [Doc. No. 21-2 at 1]. Section 4 of the 2020 MOU outlines which individuals are eligible for acceptance of return. [*Id*. at 2–3]. "[A]n individual subject to a final order of removal from the United States" must meet the following conditions:

1. Has Vietnamese citizenship and does not have citizenship of any other country at the same time;

2. Has violated U.S. law and has been ordered removed by a U.S. competent authority (and, if sentenced to a prison term, the individual must have completed any term of imprisonment before removal or a U.S. competent authority must have ordered a reduction in the sentence or the individual's release from prison);

3. Resided in Viet Nam prior to arriving to the United States and currently has no right to reside in any other country or territory.

4. [REDACTED]

[*Id*.]. Section 8 outlines Procedures for Verification and Issuance of Travel Documents. [*Id*. at 4]. Finally, Section 3, General Provisions of the 2020 MOU outlines how, "[t]his MOU constitutes an understanding only between the Participants [the Department of Homeland Security of the United States of America and the Ministry of Public Security of the Socialist Republic of Vietnam] and does not give rise to any rights or obligations under domestic or international law." [*Id*. at 2]. The 2020 MOU further states that it "does not create or confer any rights, privileges, or benefits to any individual." [*Id*.].

4

C. **Mr. Nguyen's 2025 Detention**

Since his June 2014 release, Mr. Nguyen has received no further criminal convictions and has remained fully compliant with his OSUP terms. [Doc. No. 19 at ¶ 38]. Most recently, Mr. Nguyen was virtually checking in with ICE on a yearly basis. [*Id.*]. In March 2025, during his virtual email check-in at the Boston ICE Field Office, Mr. Nguyen was instructed to go in person to the Burlington, Massachusetts office on April 30, 2025. [*Id.* at ¶ 42]. At the check-in, Mr. Nguyen was instructed to report to the Alternatives to Detention Program for the Intensive Supervision Appearance Program ("ISAP"). [*Id.* at ¶ 43]. Subsequently, his ISAP case worker instructed him to begin the process of requesting a Vietnamese passport. [*Id.*]. Mr. Nguyen did as he was told and initiated the process of requesting a Vietnamese passport. [*Id.* at ¶ 44]. He was also instructed to meet with an ICE Enforcement and Removal Operations officer on May 21, 2025. [*Id.* at ¶ 45]. Mr. Nguyen did not receive any information that the Government of Vietnam had found Mr. Nguyen eligible for repatriation at any point during this process. [*Id.* at ¶ 44].

At the May 21, 2025 check-in, ICE detained Mr. Nguyen for the purpose of effecting his removal to Vietnam, [*Id.* at ¶¶ 45–46; Doc. No. 21-1 at ¶ 5], and issued a notice of Mr. Nguyen's revocation of release. [Doc. No. 19 at ¶ 49]. The Notice of Revocation of Release stated that Mr. Nguyen's detention decision was "made based on a review of [his] official alien file and a determination that there are changed circumstances in [his] case" and that his "case is under current review by the Government of Vietnam for the issuance of a travel document." [Doc. No. 19-1 at 32]. The following day, on May 22, 2025, ICE asked Mr. Nguyen to prepare a request for travel documents to submit to the Vietnamese government while in custody. [Doc. No. 19 at ¶ 50]. Mr. Nguyen remained detained temporarily at the Boston Field Office in Burlington, Massachusetts until ICE transferred him to Plymouth County Correctional Facility on May 23, 2025, where he is currently being held. [*Id.* at ¶¶ 51, 54].

## II. PROCEDURAL HISTORY

On May 22, 2025, Mr. Nguyen filed his Petition for Writ of Habeas Corpus. [Doc. No. 1]. On May 27, 2025, Respondents filed an opposition, with a supporting declaration from ICE Assistant Field Director Keith M. Chan (the "First Declaration"). [Doc. Nos. 11–12]. On June 5, 2025, Mr. Nguyen filed a reply. [Doc. No. 16]. On June 16, 2025, Mr. Nguyen filed an Amended Petition. [Doc. No. 19]. On June 17, 2025, I held a hearing on the Petition. [Doc. No. 20]. At the hearing, I allowed Respondents an opportunity to produce a copy of the "repatriation agreement" and to supplement the record with facts pertaining to ICE's ability to remove pre-1995 Vietnamese refugees, and steps ICE has taken to secure Petitioner's travel document to Vietnam. On June 18, 2025, Respondents filed a Notice of Supplemental Authorities, which included a declaration from Assistant Field Director Chan (the "Second Declaration") and the redacted 2020 MOU as mentioned *supra*. [Doc. No. 21]. The Second Declaration stated that ICE is currently processing a travel document for Mr. Nguyen to return to Vietnam, and at present, ICE has not received such travel document. [Doc. No. 21-1 at ¶¶ 6–7]. The Second Declaration further stated that in Fiscal Year 2024, ICE removed 44 individuals to Vietnam, and that thus far, in Fiscal Year 2025, ICE has removed 284 individuals to Vietnam. [*Id*. at ¶ 9]. On June 20, 2025, Mr. Nguyen filed a response to the Notice of Supplemental Authorities. [Doc. No. 24].

## III. ANALYSIS

### A. *Zadvydas* Is Not Applicable

As a preliminary matter, Respondents argue that, because Mr. Nguyen has been detained for less than six months, his detention pending execution of his removal order is presumptively reasonable under *Zadvydas v. Davis*, 533 U.S. 678 (2001). Respondents' argument misses the mark. This case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in *Zadvydas*. This case is about ICE's authority to *re-detain* Mr. Nguyen after

6

he was issued a final order of removal, detained, and subsequently released on an OSUP. The DHS regulation, 8 C.F.R. § 241.13(i), applies to non-citizens in Petitioner's situation.

### B. Regulatory Requirements Of § 241.13(i)(2)

Respondents do not allege that Mr. Nguyen has violated his OSUP conditions of release set over ten years ago. They also do not allege that he is a flight risk. Instead, Respondents assert a change in circumstances such that there is now a significant likelihood that Mr. Nguyen will be removed to Vietnam in the reasonably foreseeable future pursuant to 8 C.F.R. § 241.13(i)(2). For the reasons below, Respondents have clearly not met their burden.[2]

"ICE's decision to re-detain a noncitizen like [Mr. Nguyen] who has been granted supervised release is governed by ICE's own regulation requiring (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." *Kong v. United States*, 62 F.4th 608, 619–20 (1st Cir. 2023) (citing 8 C.F.R. § 241.13(i)(2)).[3] "The plain language of the regulation, however, does not allow a court in the first instance to make the required individualized finding. To the extent ICE claims that it made such a determination, the court should review that claim in light of the regulations instructing ICE on how it should make such a determination." *Kong*, 62 F.4th at 620 (citing 8 C.F.R. §§ 241.13(f), (i)(2)).

On May 21, 2025, ICE made an individualized determination to re-detain Mr. Nguyen "based on a review of [his] official alien file and a determination that there are changed

---

[2] Respondents argue that Mr. Nguyen has failed to point to any good reason that his removal is not likely to occur in the reasonably foreseeable future. This is improper burden shifting. Pursuant to its own regulation, 8 C.F.R. § 241.13(i)(2), Respondents must determine changed circumstances such "that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."

[3] 8 C.F.R. § 241.13 states, "The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."

7

circumstances in [his] case." [Doc. No. 19-1 at 32]. In support, Respondents stated "[t]he United States has recently entered into a repatriation agreement with Vietnam, and ICE has started to remove Vietnamese citizens to Vietnam consistent with that agreement." [Doc. No. 11 at 6]. At the June 17, 2025, hearing, I noted that Respondents' assertions were conclusory; there was nothing in the Notice of Revocation or in the record—no statistics or supporting facts—identifying said repatriation agreement and showing that ICE had started to remove pre-1995 Vietnamese refugees, like Mr. Nguyen, to Vietnam. In other words, Respondents did not identify any facts to support that ICE re-detained Mr. Nguyen based on changed circumstances that would show his removal to be significantly likely in the reasonably foreseeable future. *See* 8 C.F.R. § 241.13(f) (setting out factors to consider including "the history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question."). In fact, at the hearing, Respondents conceded the Court's point,[4] while clarifying that the referred-to "recently entered into repatriation agreement" was the 2020 MOU.

### 1. The 2020 MOU

Although Respondents have since provided a copy of the 2020 MOU, and a Second Declaration, I remain unconvinced that ICE has met their burden under 8 C.F.R. 241.13(i)(2). ICE does not identify what changed circumstance occurred during the approximately five-year gap between issuance of the 2020 MOU and Petitioner's detention on May 21, 2025, that now

---

[4] The Government stated, "No doubt the declaration is general and it just says the United States has been successful in removing individuals to Vietnam."

8

make it significantly likely Mr. Nguyen will be removed to Vietnam. Respondents do not even state how and whether the 2020 MOU applies to Mr. Nguyen specifically. It is significant to note that the 2020 MOU does not mandate that Vietnam accept all eligible pre-1995 Vietnamese refugees with orders of removal; it "constitutes an understanding *only* between the Participants and does not give rise to any rights or obligations under domestic or international law;" it "does not create or confer any rights, privileges, or benefits on any individual." [Doc. No. 21-2 at 2 (emphasis added)]. Thus, even assuming Mr. Nguyen is eligible to be removed to Vietnam under the 2020 MOU, which Respondents have not established, DHS may only request his removal; Vietnam has total discretion whether to issue a travel document to any individual. Thus, the 2020 MOU alone is not enough to show ICE has met their burden under 8 C.F.R. 241.13(i)(2).

### 2. The Second Declaration

The Second Declaration asserts that 44 individuals were removed to Vietnam in Fiscal Year 2024, and that 284 have been removed thus far in Fiscal Year 2025. These numbers do not aid in my analysis because I am missing some very pertinent information. For example, if the total number of requests that were made to Vietnam was disclosed, I might be able to gauge how likely it is that Petitioner would be removed to Vietnam. If DHS submitted 350 requests and Vietnam issued travel documents for 328 individuals, Respondents may very well have shown that removal is significantly likely in the reasonably foreseeable future. On the other hand, if DHS submitted 3,500 requests and only 328 individuals received travel documents, Respondents would not be able to meet their burden.[5]

---

[5] In *Kong*, the First Circuit distinguished a petitioner's detention—which "lasted for over fifty days and occurred before travel documents were secured, before deportation was certain, and allegedly without a valid warrant or any determination that his removal was likely in the reasonably foreseeable future" — with a petitioner on appeal in the Third Circuit. 62 F.4th at 618 (contrasting *Tazu v. Att'y Gen.*, 975 F.3d 292, 297–299 (3d Cir. 2020)). There, the Third Circuit held that "judicial review was barred" because petitioner's "travel documents were secured and ICE was certain it would deport him to Bangladesh." *Id*.

More glaring however is that the Second Declaration does not identify how many of the 328 individuals removed during Fiscal Years 2024 and 2025 were *pre-1995 Vietnamese refugees*, like Mr. Nguyen. *See Thai v. Hyde*, No. 25-cv-11499, 2025 WL 1655489, at *3 (D. Mass. June 11, 2025) (emphasis added) (finding a petitioner's removal foreseeable where the Government previously removed at least 25 *similarly situated* aliens to Cambodia.). The lack of information is especially significant given that since 2008, the United States has had a repatriation agreement to remove post-1995 Vietnamese refugees and that the United States has had a long history of not being able to remove pre-1995 Vietnamese arrivals. *See* 8 C.F.R. § 241.13(f) (factor to consider includes "history of the Service's efforts to remove aliens to the country in question"). Thus, to the extent ICE claims their determination was made based on these numbers and the 2020 MOU, I am unconvinced that they show any circumstances having changed such that there is a significant likelihood that Mr. Nguyen will be removed to Vietnam in the reasonably foreseeable future pursuant to 8 C.F.R. § 241.13(i)(2).

### 3. Mr. Nguyen's Travel Document Request

Respondents argue that ICE is currently processing a travel document for Mr. Nguyen to return to Vietnam and that the United States has not received said travel document. Again, Respondents have provided scant information to support its determination that Mr. Nguyen is significantly likely to be removed in the foreseeable future. In particular, Respondents have not identified what concrete steps ICE has taken to process Mr. Nguyen's particular travel document.[6] *See* 8 C.F.R. § 241.13(f) (factor to consider includes "nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable

---

[6] Although the 2020 MOU, Section 8, identifies Procedures for Verification and Issuance of Travel Documents, [Doc. No. 21-2 at 4–5], as mentioned, Vietnam retains total discretion to approve or deny issuance of a travel document to any individual. [*Id*. at 2–3].

results of those efforts"). On the record before me, it is only Mr. Nguyen who has requested a travel document to Vietnam. I have no clear information as to whether or when Mr. Nguyen's request was submitted to Vietnam,[7] whether Vietnam has even acknowledged receipt of the request or otherwise responded to Mr. Nguyen's request, or the anticipated wait time for a response from Vietnam. On this record, Respondents cannot make the showing that circumstances have changed such that there is a significant likelihood that Mr. Nguyen will be removed to Vietnam in the reasonably foreseeable future pursuant to 8 C.F.R. § 241.13(i)(2).

### C. Remedy

Taken together, ICE's individualized determination to re-detain Mr. Nguyen is not in compliance with 8 C.F.R. § 241.13(f), (i)(2). And "ICE, like any agency, has the duty to follow its own federal regulations." *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (cleaned up). As here, "where an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute . . . and [ICE] fails to adhere to it, the challenged [action] is invalid." *Id*. (cleaned up); *see also Zadvydas v. Davis,* 533 U.S. 678, 690 (2001) ("The Fifth Amendment's Due Process Clause forbids the Government to 'depriv[e]" any "person ... of ... liberty ... without due process of law.' Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."). Based on ICE's violations of its own regulations, I conclude that Mr. Nguyen's detention is unlawful and that his release is appropriate. *Id*. at 389 (allowing

---

[7] The facts are murky on what steps Mr. Nguyen has taken to request a travel document to Vietnam. On or about March 2025, based on ICE's direction and before he was taken in custody, Mr. Nguyen initiated the process to request a Vietnamese passport. Then, on May 21, 2025, Mr. Nguyen received a Notice of Revocation which stated his "case is under current review by the Government of Vietnam for the issuance of a travel document." [Doc. No. 19-1 at 32]. The next day, on May 22, 2025, ICE asked Mr. Nguyen, once more, to prepare a request for travel documents to submit to the Vietnamese Government.

petitioner's motion for release upon a finding that ICE violated its regulations that implicated a fundamental constitutional right).

## IV. CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas is <u>GRANTED</u>. Petitioner is to be released from detention immediately pursuant to the conditions in his preexisting Order of Supervision. While Nguyen is on supervised release, nothing stops Respondents from requesting the Government of Vietnam to accept his return. If and when ICE secures a travel document for Mr. Nguyen, a changed circumstance as discussed by the First Circuit in *Kong* would have occurred such that ICE may then re-detain Nguyen for removal.

SO ORDERED.


/s/ Myong J. Joun
United States District Judge